BRIEF AND POINTS FOR COMPLAINANTS.
The complainants are the widow and surviving children (and a son-in-law) of Ebenezer Kelly, deceased. The respondents are his executors and trustees under his will. Ebenezer Kelly died in 1852. His will was proved January 11th, 1853. He left, at his decease, five children; one of whom, Benjamin E. Kelly, died intestate, May 4th, 1863. The complainants are his heirs-at-law, and legal representatives. The testator's youngest child became of age, November 9th, 1867. The questions to be considered arise upon the construction of the fifteenth clause of the will of the said Ebenezer Kelly, which is as follows: —
"Fifteenth. — I give, devise and bequeath to Arba B. Dike, Allen O. Peck, and John R. Balch, all of said city of Providence, all the rest, residue and remainder of my estate and estates, both real and personal, to have and to hold the same in trust, to and for the several uses, intents and purposes hereinafter expressed and declared, viz.: — At my decease to take possession of all my estate and estates, both real and personal, and collect and receive all the dividends, rents, incomes and profits that may from time to time accrue from the property herein bequeathed and devised the said trustees, and after the payment of my just debts and funeral expenses, and after the payment of all the expenses accruing in the execution of this trust — and after paying all of the aforesaid bequests, and after paying all the taxes that may from time to time be assessed upon my estate — and after paying the expenses of keeping the Mansion House estate insured, and after paying the expenses of *Page 438 
keeping said estate in good repair, * * * * * * from time to time, as often as is necessary. 1. I hereby direct my said trustees, to invest the surplus of said dividends, rents, income and profits, in the stock of some good bank or banks in said city of Providence. 2. And I further direct, and the said trustees are hereby authorized and empowered, to sell and convey all my real estate (excepting my Mansion House estate, and also excepting my interest in a mortgage upon the Granite Building, at the corner of Market Square and North Main street, in said city of Providence), at such times and at such places as they may think proper, and to make, execute, seal, acknowledge and deliver, to the purchaser or purchasers thereof, a good and sufficient deed or deeds of the same — and to collect and receive the proceeds of such sales, and to invest the same in the stock of some good bank or banks of said city of Providence. 3. And I further direct — and the said trustees are hereby authorized and empowered, to pay out of and from said trust fund, to my said wife, Sophia P. Kelly, the sum of twelve hundred dollars a year, in equal quarter-yearly payments, in each and every year, from the time of my decease, until my youngest child shall have arrived at the age of twenty-one years — which said sum of twelve-hundred dollars is to be applied by my said wife to the support of my said wife, and my children. And after my youngest child shall have arrived at the age of twenty-one years, to pay out of and from said trust fund, to my said wife, the sum of four hundred dollars a year, for and during the term of her natural life, or so long as she shall remain my widow — which said sum is to be in addition to the sum of one hundred and fifty dollars, herein before bequeathed to my said wife. And in case my said wife shall again marry, I hereby direct that my said trustees shall pay out of and from said trust fund, to my said wife, the sum of fifty dollars a year, for and during the term of her natural life — which said bequest of fifty dollars is to be in lieu of all gifts and bequests herein before made by me to my said wife, and revoking the use and occupation of my Mansion House estate and furniture, herein before assigned to her. 4. And I further direct — and the said trustees are hereby *Page 439 
authorized and empowered — that whenever my sons shall respectively arrive at the age of twenty-five years (25) of age, and shall be prudent, steady and industrious, and be desirous of entering into business, to pay over and advance, out of and from said trust fund, the sum of five thousand dollars to each one of them. 5. And I further direct, and the said trustees are hereby authorized and empowered, to pay over and advance out of and from said trust fund, the sum of one thousand dollars to each of my daughters, upon their marriage. 6. And I further direct, and my said trustees are hereby authorized and empowered — that in case my son Eben should wish to visit Europe, when he is older, and my trustees shall think proper to let him go, for the purpose of studying and perfecting himself in music — to advance him a reasonable [sum] for his expenses per year, out of and from said trust fund. 7. And I further direct, that the sums of money so advanced, as aforesaid, by the said trustees, shall be charged against them respectively — and be deducted from the respective shares of my sons and daughters receiving said advances. 8. And I further direct, and my will is, that when my youngest child shall arrive at the age of twenty-one years, said trust fund shall be divided between my children, share and share alike, first deducting from his or her share, all advances make by the said trustees, to him or her — and be held in trust by the said trustees, and be invested in the stock of some good bank or banks in Providence, in their respective names — for and during the term of the natural lives of each of my said children. And the dividends, income and profits thereof, to be paid over by the said trustees semi-annually, in each and every year, from the time of my decease, for and during the term of the natural lives of my said children, to each of them. 9. And I further direct, that no bond be given for the return of an inventory of my estate. And I further direct, that in case the trustees herein named shall refuse to accept of said appointment, or shall decease, or be unable to execute the trusts aforesaid, that the Municipal Court of the city of Providence shall appoint some suitable persons to execute the trusts aforesaid. 10. And I further direct, that each of my said trustees shall *Page 440 
receive the sum of fifty dollars a year for their services if faithfully performed. Lastly, I hereby nominate, constitute and appoint Arba B. Dike, Allen O. Peck and John R. Balch, all of said city of Providence, executors of this my last will and testament — hereby revoking and annulling all other and former wills by me made, and establishing and confirming this and this only, as and for my last will and testament."
The several questions which have arisen upon the construction of this clause, and upon which the complainants ask the judgment of the court, are embodied, with their claims as to what should be the proper construction thereof in the points of the brief herewith submitted.
I. The complainants, being the heirs at law and legal representatives of Benjamin E. Kelly, deceased, are entitled to have his portion of the capital, and also of the increase of the trust fund, (being one-fifth part thereof) divided among them absolutely in equal proportions, and the trust as to the share of the said Benjamin E. Kelly should be thereupon terminated. 1. Benjamin E. Kelly had a vested estate for life, in equity, remainder in fee to his heirs at law, in one undivided fifth part of the aforesaid trust estate, and all accumulations thereof.Opinion of Supreme Court in D'Wolf Will Case, per Brayton, J., p. 5; 1 Jarman on Wills, 734-735 and cases there cited; Booth
v. Booth, 4 Vesey, 399; Packham v. Gregory, 4 Hare, 396;Cooper v. Cooper, 7 Jur. N.S. 178; Letchworth's Appeal, 30 Penn. St. R. 175; Hanson v. Graham, 6 Ves. 239-248;Saunders v. Vautier, 1 Cr. Ph. 247; Carlton v. Hudson,
Law Rep. 1 H.L.C. 232. Had the will of Ebenezer Kelly provided, that when his youngest child should arrive at the age of twenty-one years, said trust fund should be divided between his children, share and share alike, it is evident on the authority of the cases cited above, particularly the D'Wolf Will Case, which decides this very question, that Benjamin E. Kelly would have taken a vested estate in one undivided fifth part of said trust fund, transmissible at his death to his representatives.Opinion in D'Wolf Will Case, p. 11. The provision in the testator's *Page 441 
will, that the fund was to be held in trust for him during his life, is immaterial in this connection: If a trust was created for his benefit, taking effect on the death of the testator, his estate, although only an equitable one for life, was a vested estate, and transmissible to his heirs. Opinion in D'Wolf WillCase, p. 7; Phipps v. Williams, 5 Sim. 44; cited in 2Redfield on Wills, p. 604. 2. This being a gift of a residue, it must be construed to be vested. The court will so construe the will as to prevent intestacy, or a failure to carry out the trust. Opinion in D'Wolf Will Case, p. 7; 1 Jarman on Wills,
p. 767-8; Booth v. Booth, 4 Vesey, 399. Any construction of the will other than that claimed by us, would have caused a failure of the trust, had all the children died, as might have happened, before the youngest arrived at the age of twenty-one. On the death of the testator, the respondents immediately become trustees. "For whom are they trustees? Obviously for all the children of the testator who should survive him, and not all those only who should be living when the youngest should attain twenty-one." Leeming v. Sherratt, 2 Hare, 22. The trustees are directed to divide the trust fund among all the testator's children, share and share alike, when the youngest child arrives at the age of twenty-one years. New trusts are then created for the benefit of the several children respectively. The children now living received equitable estates in separate shares of the trust fund. The respondent trustees hold one share in trust for Benjamin E. Kelly. He has deceased, intestate, and his heirs at law and legal representatives are entitled to receive it absolutely to their own use, at this time. 3. Those authorities which hold that a devise to a person if he shall live to attain a particular age, standing alone, would be contingent, have no application to the present case. The rule which obtains in those cases is, that if a legacy is given at twenty-one, or if,when, in case, or provided, the legatee attains twenty-one, or any future definite period, this confers on him a contingent interest, which depends for its vesting, and its transmissibility to his executors or administrators, on his being alive at the period specified. Williams on Executors, 1057. This case falls within the other rule, *Page 442 
that a bequest to a person payable or to be paid, at or when he shall attain twenty-one years of age, or at the end of any other certain determinate term, confers on him a vested interest.Williams on Executors, 1051-53, and cases there cited. And the gift is not made contingent, by the direction to accumulate till the time of payment arrives. Blease v. Burgh, 2 Beav. 226;Saunders v. Vautier, 1 Cr. Ph. 248. 4. The court should construe the will so as to give a vested interest, because that is in accordance with the intent of the testator. a. The testator makes provision in his will for advancements to his children out of the trust fund, in the event of certain contingencies happening. These advances "shall be charged against them respectively, and be deducted from the respective shares of my sons and daughters receiving said advances." How can the trustees carry out this provision of the will, unless the children take vested estates? They have made certain advances and charged them against the respective shares of his children, as directed. Therefore, the shares are recognized by the testator as existing before the coming of age of his youngest child, not as contingent and taking effect just at that time. b. The testator must have intended, that if any one of his children should decease prior to the time his youngest child arrived at the age of twenty-one, leaving children, those children should take the share of his estate which their parent would have received if then living. He contemplates the possibility of the marriage of some of his children before the arrival of the time for the division of the trust estate, and makes provision therefor. He must have foreseen the possibility, we had almost said the probability, that before that time arrived, some one or more of them might die, leaving young children. Did he intend that they should be left destitute? Suppose Benjamin E. Kelly had left children surviving him. Would not the court feel that they were defeating the wishes of the testator, if they should, by their decree, refuse these children any interest in his estate? c.
The intent of the testator was, that each of his children should receive the income only of their respective shares in his estate during their lives, but that as their deaths respectively occurred, *Page 443 
the principal of their shares should be divided out absolutely among their heirs. However this case may be decided, the principal of the shares of the children now surviving will, as they decease, go absolutely to their heirs at law and legal representatives. It is in accordance with the will of the testator, that the share of his deceased child, in his estate, should receive the same disposition as the shares of his surviving children are to receive when they shall decease.
II. Those of the complainants who are the surviving children of the testator, are entitled to receive from the trustees respondents, forthwith, all the dividends, income and profits of their respective shares of the trust fund, and all the accumulations of the same occasioned by re-investment thereof, from the time of the death of the testator, to be divided equally among them, absolutely, for their own use. When a residue is vested, the income is payable, of course, notwithstanding the possession of the capital may be postponed. Nicholls v.Osborne, 2 P. Wms. 419, and cases cited in note, p. 421.Chaworth v. Hooper, 1 Bro. C.C. 82. This construction is in accordance with the will of the testator, and it does violence to his language to give it any other interpretation.
III. The payments made by the respondents as executors of the will of Ebenezer Kelly, for his debts, bequests, funeral expenses, to the appraisers of his estate, and for court expenses, and also the advances to certain of the complainants for "business purposes," and "at marriage," under the provisions of the 15th clause of his will, should be charged to the principal of the trust fund, and deducted therefrom. The advances to the children are directed to be made out of and from thetrust fund, which means from the capital of the trust fund. To take them from the income would defeat the wish of the testator, that the children should receive all the income of their respective shares from the time of his decease, and these additional sums as advances, in the event of certain contingencies. To charge the other payments to the income of the trust fund, would in like manner conflict with the will of the testator, that his children should receive all the income. It is also in violation of the *Page 444 
express injunctions of his will. We put into this case, as a part of the complainant's argument, the following full and decided opinion of the late Chief Justice Ames, on the construction of this will. It will be perceived that he gave it a very careful consideration: —
"BOSTON, Jan. 27, 1853.
"A.O. PECK, Esq.
"Dear Sir: — When last in town (Tuesday) I called to see Mrs. Kelly, and conversed with her about the provisions of her husband's will. She called my attention especially to the provision made for the children, it having been directed by you rather to the provision made for herself. I told her that I would give attention to it in this view, and would apprise her early of any result to which I might come.
"I stated to you in my former letter, that in my view, the rights of the children became vested on the death of the testator, so that they took then for themselves and their heirs, all that they ever would take under the will. One consequence of this I also mentioned, and that is, that upon the death of either of the children, his or her estate would vest in his or her heirs at law, one of whom, if there be no children, would be Mrs. Kelly. This consequence pertained to the view I was taking of the will in relation to the rights of Mrs. K. But in the view which Mrs. K. has requested me to take of it, i.e. in relation to the rights of the children, it becomes of still higher importance, because the interest in the capital being vested in them, the right to have the rents and profits paid over to them, necessarily follows, unless plainly restrained by the words of the testator. How far this right is restrained, was the matter to which Mrs. K. especially desired my attention.
"Now what struck Mrs. K. was, and what strikes me, is, that although $1200 per annum is provided for the support of herself and children, not a word is said about, and no provision is made for, the education of the children, who are young, will have a handsome fortune, and whom you cannot suppose that the testator expected would grow up in ignorance, or even without *Page 445 
those accomplishments which he provided in his lifetime for the two eldest of both sexes. Twelve hundred dollars will not provide for their support hardly, leaving their education wholly uncared for. This consideration has led me critically to examine the provisions of the will, in relation to what was to be done with the income of the children's shares during the long period that must elapse (fifteen years) before the youngest became of age.
"The first impression, undoubtedly, conveyed by the will is, that it is to accumulate until the youngest becomes of age, the direction to invest being given in the early part of the will. It is plain, however, that this direction refers to asurplus merely; because, although it speaks as if all the dividends, except what was before bequeathed — and expenses, taxes and repairs — were to be invested, yet in the very next sentence but one, he goes on to use up $1,200 per annum of them, in the support of his wife and children, as well as $5,000 to each of the sons and $1,000 to each of the daughters on certain contingencies, so that it is plain that it is a surplus to beascertained after what follows the investment clause issatisfied, which is to be invested, and not as the words of that clause imply, which is ascertained by what precedes it. Now you will notice that in the clause which directs the settlement of all accounts for advances and the investment of the shares of each child in his or her name, (meaning, I suppose, in the name of the trustee for each child,) when the youngest arrives of age he directs that the dividends of the share of each is to be paid over to each "from the time of my decease." Language can hardly be devised stronger, to express the idea, that each from thattime is to have the enjoyment of his or her income. Grant that there is an inconsistency between this provision and the former part of the will, about investment, which I do not grant to the extent which might at first be supposed, yet this is the last
provision on the subject, and like the last will must govern. He supposes that all his property — proceeds of sale, c., will be invested, dividends uncalled for, c.; but the income of each child's share is to be paid over to him or her from the time of his decease. I think the will admits of *Page 446 
this construction, that you cannot satisfy the words, "from the time of my decease," in any other way. Under the circumstances, too, the court will be inclined to give the will this construction, so much better for the true interests of the children, rather than to keep them in ignorance and poverty for fifteen years, in order that they may be then rich. The will is badly drawn, and the more I think of it, the more I am convinced, that for Mrs. Kelly's sake, as well as for the sake of the children, it should be construed by the court. Mrs. Kelly's own rights under it also should be ascertained. Suppose she should reject the provision in lieu of dower — no doubt the court will say that she and the children must live in the mansion which the testator set apart for their common benefit, the only difference being, that if she rejects the provision she will live in it incidentally for the care of the children, whereas, if she accepts it, they will live in it incidentally in order to be cared for by her. I write this because I shall not be in town for the week, and I wished as far as I could to relieve Mrs. Kelly's anxiety.
"Keep this and the former letter. Yours truly,
(Signed,) "SAMUEL AMES."
IV. The complainants are entitled to a decree in their favor on all the above points, and for an account.
BRIEF AND POINTS FOR RESPONDENTS.
The case is fully stated in the bill and answer. The questions raised therein in regard to the will of Ebenezer Kelly, and upon which the judgment of the court is invoked, are three. They arise under the 15th clause of his will, and are as follows: —
First. Did the children of Ebenezer Kelly, upon his decease, take vested estates in equity for life, so that by the death of Benjamin E. Kelly, one of the children, before the arrival of the youngest at the age of twenty-one years, his heirs-at-law are entitled to have his share of the capital and accumulations divided out among them absolutely. *Page 447 
 Second. Are the surviving children of Ebenezer Kelly entitled to have all the accumulations of dividends, income and profits which have been invested by the trustees, paid out to them absolutely.
Third. Have the various payments made by the trustees for "debts," "bequests," "expenses," "advances for business purposes," and "at marriage," been properly charged to the income or increase fund, or should they have been charged to original capital.
As to question 1.
I. The test in regard to the vesting of gifts, payment of which is postponed to a period subsequent to the debt of the testator, is this: — Is futurity annexed to the substance of the gift, or does it relate to the time of payment only? If futurity is annexed to the substance of the gift, the vesting is suspended. If it appears to relate to the time of payment only, the legacy vests instanter. Jarman on Wills, vol. 1, 760;Lester v. Bradley, I Hare; Watson v. Hayes 9 Simons, 500;Bateford v. Kebbell, 3 Vesey, 363; Shattuck v. Stedman, 2 Pick. Where there is no gift but by a direction to pay, or divide and pay at a future time, or on a given event, or to transfer "from and after" a given event, the vesting will be postponed till after that time has arrived or that event has happened, unless from particular circumstances a contrary intention is to be collected. Williams on Executors, vol. 2, p. 1050, and cases cited. Words directing a division or distribution between two or more objects at a future time, when they are engrafted on a gift which would, without those superadded expressions, confer an immediate interest, do not postpone the vesting. But if the payment or distribution is deferred until an event which may or may not happen, the effect is to render the legacy contingent.Jarman, vol. 1, 761; Atkins v. Hiccock, 1 Atk. 500; Leake
v. Robinson, 2 Mer. 363. Although a bequest to a personpayable or to be paid at or when he shall attain twenty-one years of age, or at the end of any other certain determinate term, confers on him a vested interest immediately on the testator's death, yet if the words "payable," or "to be
paid," are omitted, and the legacies *Page 448 
are given at twenty-one, or if when the legatee arrives at twenty-one, or any future definite period, these expressions annex time to the substance of the gift and make the legatee's right to it depend upon his being alive at the time fixed for payment. Williams on Executors, vol. 2, p. 1051; Cruse v.Barley, 3 P.W. 20; Smell v. Lee, 2 Salk. 415; Hanson v.Graham, 6 Ves. 243; Elton v. Elton, 3 Atk. 504, and many other cases. In this case there is no gift to the children,payable or to be paid, when the youngest arrives at the age of twenty-one years. Time is annexed to the substance of the gift. There is no gift but in the direction to divide when the youngest child attains the age of twenty-one years. The testator devises the residuary of the estate to trustees, with directions to accumulate and invest the income, excepting such advances for certain purposes as may be made in the discretion of the trustees, and when the youngest arrives at twenty-one years of age, then to be divided among his children share and share alike. This case, we think, falls precisely within the rule in the above cases. In this case there is no limitation over in the event of the death of one of the children before the arrival of the youngest at twenty-one years of age. Consequently it does not fall under the class of cases where the limitation over is considered as supplying an argument in favor of the prior devisee taking an immediate interest, as in Smith v. Hiccock 9 Ves. 333; Peyton v. Bury, 2 P.W. 626; Murkin v. Phillipson, 2 M. K. 257. Nor does this case fall within the class of cases where the will provides for the donee who is to take the estate in possession at a certain age, to enjoy the income of it during the intervening period, that fact being regarded as satisfactory proof that the testator intended the devisees to take a vested interest in the first instance. As in Vawdry v. Geddes, 1 Russ. Myl. 203; see also Jarman, vol. 1, 3d ed. p. 766, side;Redfield on Wills, p. 613, and cases cited. In this case the children do not take the interest in the meantime, but the same is to accumulate. And, although a direction to accumulate the interest by adding to the principal until the donee shall attain the age of twenty-one, will not defer the vesting as in Blease
v. Bligh, 2 Beav. 221; Josselyn v. Josselyn, *Page 449 
9 Sim. 63; yet, where only a portion of the interest or income of the fund, is directed to be expended in the maintenance of the legatee, and the remainder to accumulate as part of the principal until the donee attain his majority, and then the whole to be paid to the legatee, it will not create a vested interest in the corpus of the fund. Leake v. Robinson, 3 Mer. 363; Vawdry
v. Geddes, 1 Russ. Myl. 203; Scott v. Tyler, 2 Bro. C.C. 431; Palsford v. Hunter, 2 Bro. C.C. 416. In this case the testator directs a mere allowance, simply, in the discretion of the trustees, for the benefit of the children. Although the law favors the vesting of estates, especially in the case of residuary bequests, nevertheless, if the intent of the testator appear to the contrary, that intent must prevail. See Judd v.Judd, 3 Sim. 525; Newman v. Newman, 10 Sim. 51. Is it not clear under this will, that the testator designed that his children should, in no event, have the absolute control of any portion of his property? The division to be made by the 15th clause, when the youngest shall attain the age of twenty-one, is a mere setting apart of certain shares still to be held in trust during their natural lives.
Question 2.
Are the surviving children entitled to have the dividends and income which have accrued since the death of the testator, and which have been invested by the trustees in pursuance of his direction, now paid over to them absolutely? This claim we think is against the manifest intent of the testator. The directions are explicit to invest the surplus of the income after paying certain expenses, debts, taxes, repairs, c. The trust fund, so called in the will, is the original capital with the invested accumulations. The trust fund to be divided when the youngest arrives at twenty-one is the same. From the date of the division, they are to have what they have not had before; the full income of their respective shares during their natural lives. The expression, "and the dividends, income and profits thereof, to be paid over by the said trustees semi-annually, in each and every year, from and after the time of my decease," being in the same paragraph, and connected with the division of the *Page 450 
trust fund into shares at the arrival of the youngest to the age of twenty-one years, must be construed to mean, from and after my decease and the division aforesaid.
Question 3.
Have the various payments made by the trustees for "debts," "bequests," "expenses," "advances at marriage" and "business purposes," been properly charged to the income or increase fund. Clearly, we say to the income or increase of the estate. The first paragraph of the 15th clause especially directs, that debts, funeral expenses, expenses of executing the trust, bequests, taxes, insurance and repairs, shall be paid out of the income, and the surplus then to be invested. The will provides for an annuity to the widow, and advances to the children for business purposes and at marriage, in the discretion of the trustees. We can hardly suppose that the testator intended the annuity to the widow to be drawn from any other source than the income of the estate. The advances for business purposes and at marriage, are to be taken from the "trust fund," as it is termed; this trust fund being the original estate and the accumulations invested or in the hands of the trustees, or cash. It can hardly be supposed that the testator contemplated breaking in upon the original capital, if the accruing or accrued income was sufficient without it. The testator intended his estate should accumulate until the arrival of the youngest at twenty-one years of age. We may, therefore, fairly infer that all payments by the trustees were intended to be charged to the income.
This is a bill in equity, calling upon the court for a construction, in several particulars, of the will of the late Ebenezer Kelly.
The questions propounded are: — First, Did the children of said Kelly take under his will estates in equity, vested in them at the time of his decease, or contingent upon the youngest living to the age of twenty-one years.
In determining questions of this nature, the courts construe the estates as vested, rather than contingent, where the expressions of the will are capable of either interpretation.D'Wolf Will Case, R.I. Reports. This disposition on the part of the *Page 451 
courts is strongest in the more recent cases. 2 Redfield on Wills, 612. The allowance of the entire income pending the period between the decease and the final delivery or distribution of the corpus of the property, is deemed sufficient evidence of the intention of the testator, that the estate shall vest at the decease. Where a portion is given especially in the discretion of the trustees, it is said by Mr. Redfield, in his summary of the cases on this subject, to afford a "a less conclusive ground of inference in favor of the estate vesting, but still one of very considerable weight." 2 Redfield on Wills, 613, note.
In the case at bar, it will be seen by the provisions of the will, that a portion of the trust fund is annually given, that specific additional sums are to be allowed the sons upon going into business, and to the daughters upon marriage, and a discretionary sum to be given one for expenses in Europe prior to the contingency in question, and that these advancements "shall be charged against them respectively, and be deducted by them from the respective shares of my sons and daughters receiving said advances." This direction thus to charge these advances to the shares seems to us very strongly to indicate the idea and intention in the mind of the testator, that at the time of such charges, the children had some vested interest in the estate, against which these charges could be made.
The authority given to make the advances also, as we have seen, is of very considerable weight in favor of the estate vesting.
Again, we do not think it reasonable to suppose that the testator intended that none of his children should have any vested interest unless the youngest child should arrive at the age of twenty-one. The phrase "when my youngest child shall arrive at the age of twenty-one years said trust fund shall be divided between my children," seems to us, viewed in connection with the whole structure and plan of the will, rather to indicate the time of the division, or payment as it were, than to indicate a condition precedent as to any of his children having a vested interest in this estate. The concluding clauses of this paragraph of the will would be absolutely conclusive, if understood *Page 452 
literally. The clause is, "And the dividends, income and profits thereof, to be paid over by the said trustees semi-annually, in each and every year, from the time of my decease, for and during the term of the natural lives of my said children, to each of them." And if the clause cannot be understood literally, considered in connection with the whole will, still it indicates strongly that in the testator's mind he believed that each of his children had a vested interest in his estate from the time of his decease, and not merely in case his youngest child should reach the age of twenty-one.
Again, there is no devise over, upon the failure of such contingency.
For these reasons we are satisfied that the intention to be deduced from all the provisions of the will is, that the children should take a vested equitable estate upon the decease of the testator.
A second question is, whether the children are entitled to the "income semi-annually" etc., of the trust fund, from the time of the decease of the testator.
The clause which we have just cited from the will, certainly, declares in so many words, that the income shall be thus paid over. In this respect it seems to us in conflict with the main scope and plan of the will. That certainly is, that the sum of twelve hundred dollars shall be annually paid to the widow, for the support of herself and children, with specific and other payments upon entering business, marriage, and education of one of the sons in Europe. The will is not drafted with clear understanding and harmony in all its provisions. We think we give effect to its main and controlling intent by treating the phrase "from the time of my decease" in the clause in question, as having been inadvertently used, because of its manifest inconsistency with the whole scope and plan of the will. Having made these careful and explicit trust provisions in regard to his estate and his children, it is not reasonable to suppose that he intended that the entire income of his property should semi-annually be paid over to these young children discharged of the trust, and that the special provision made by him for them should be borne by the principal of his estate. *Page 453 
From the time that the youngest arrived at the age of twenty-one, we believe the testator intended that the entire income should be paid to the children, and not before. Such seems the meaning of the context.
As to the third question, whether the payment and advances heretofore made by the trustees should be charged to the income, or taken out of the principal, the answer is already given substantially, in deciding the preceding question. We think these payments for the support of the family should be charged to the income generally, and the advances to each child be charged to the share of that child, as required by the will.